# In the United States Court of Federal Claims

No. 21-1702
(Filed: April 15, 2022)
(Re-Filed: May 4, 2022)[1]

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * *<br>RCH PARTNERS, LLC,<br>         *Plaintiff*,<br><br>v.<br>THE UNITED STATES,<br>         *Defendant*,<br><br>and<br>HALVIK INC.,<br>         *Intervenor*,<br>and<br>STEAMPUNK, INC.,<br>         *Intervenor*,<br><br>and<br>RIVA SOLUTIONS, INC.,<br>         *Intervenor,*<br><br>and<br>BOOZ ALLEN HAMILTON INC.<br>         *Intervenor.*<br>* * * * * * * * * * * * * * * * * * * * * | Bid protest; post-award bid protest; best value determination; highest technically rated proposal with a fair and reasonable price; transitive property of inequality; unequal treatment |

    *Jon D. Levin*, Huntsville, AL, for plaintiff, RCH Partners, LLC, with whom were *W. Brad English*, *Emily J. Chancey*, *Joshua B. Duvall*, and *Nicholas P. Greer*.

---

[1] This opinion was originally issued under seal in order to afford the parties an opportunity to propose redactions of the protected material. We have redacted information necessary to safeguard the competitive process. Redactions are indicated by brackets.

1

*John M. McAdams III* and *Elinor J. Kim*, Trial Attorneys, United States Department of Justice, Civil Division, with whom were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Lisa L. Donahue*, Assistant Director, for defendant. *Nicholas Oettinger* and *Andrew Squire*, United States Patent & Trademark Office, of counsel.

*Alexander J. Brittin*, Washington, DC, for intervenor, Halvik Corp., with whom were *Mary Pat Buckenmeyer* and *A. Jonathan Brittin, Jr.*, of counsel.

*David S. Black*, Tysons, VA, for intervenor, Steampunk, Inc., with whom were *Gregory R. Hallmark*, *Amy L. Fuentes*, *Kelsey M. Hayes*, and *Hillary J. Freund*, of counsel.

*Elizabeth N. Jochum*, Washington, DC, for intervenor, RIVA Solutions, Inc., with whom were *Tjasse L. Fritz*, *Samarth Barot*, and *Patrick Collins*, of counsel.

*Gary J. Campbell*, Washington, DC, for intervenor, Booz Allen Hamilton Inc., with whom was *Lidiya Kurin*, of counsel.

OPINION

This is a post-award bid protest of the United States Patent and Trademark Office's ("USPTO" or "agency") decision to award an indefinite-delivery, indefinite-quantity contract for IT services to five companies: one non-intervening company, Science Applications International Corporation ("SAIC"), and four intervening companies, Halvik Corp. ("Halvik"); Booz Allen Hamilton Inc. ("BAH"); RIVA Solutions, Inc. ("RIVA"); and Steampunk, Inc. ("Steampunk"). Plaintiff, RCH Partners, LLC ("RCH" or "protestor"), complains that the agency's evaluation of Halvik's past performance was irrational, its best value determination was unlawful and irrational, its evaluation of RCH's technical approach was unequal to other offerors, and its evaluation of RCH's program management and staffing approach was arbitrary and unequal to other offerors. After a remand, the matter is now fully briefed on cross-motions for judgment on the administrative record ("MJARs"), and oral argument was held on March 14, 2022. Because the agency's actions were reasonable, we deny the protest. Due to the related protests also filed in this procurement, the court's opinion

in *Stratera Fulcrum Technologies, LLC v. United States*, 21-1770C, addresses many of the claims made here. The parties may look to that opinion for our reasoning and applicable legal standards. If the relevant facts differ or the protestor presented unique arguments, they are addressed below.

## BACKGROUND

The following ratings were assigned to the protestor and awardees:

| Vendor Name | Business Size | Factor 1 | Factor 2 | Factor 3 | Factor 4 | Factor 5 |
|---|---|---|---|---|---|---|
| Halvik Corporation | Small | N/A | Satisfactory | Superior | Superior | Fair and Reasonable |
| RIVA | Small | N/A | Superior | Superior | Satisfactory | Fair and Reasonable |
| Steampunk | Small | N/A | Satisfactory | Superior | Superior | Fair and Reasonable |
| Booz Allen Hamilton | Large | Satisfactory | Superior | Superior | Superior | Fair and Reasonable |
| SAIC | Large | Satisfactory | Satisfactory | Superior | Superior | Fair and Reasonable |
| RCH Partners | Small | N/A | Satisfactory | Superior | Satisfactory | Fair and Reasonable |

Pl.'s Mot. at 12.

## DISCUSSION

### I.     The Agency's Best Value Determination was Reasonable

RCH argues that USPTO's award decision was arbitrary and unlawful for two reasons. First, it argues that the agency did not meaningfully consider price because it only required prices be fair and reasonable. Second, it argues that the agency's use of the transitive property of inequality was irrational and that selecting [*****] as the control offeror was arbitrary.[2] It contends that if the agency had compared proposals directly, such as Steampunk and RCH, it could have found that RCH was better than Steampunk, an awardee, and awarded a contract to RCH.

---

2 RCH does present a new argument, contending that by selecting [*****], the agency placed an outsized importance on technical approach, where [*****] did better than Steampunk and Halvik, over past performance & program management and staffing approach, where Halvik and Steampunk were better than [*****]. This argument has no merit, however, because as the RFP explained, technical approach is more important than past performance & program management and staffing, making it reasonable to select [*****] as an offeror. As we concluded in *Stratera,* the agency's method of selecting possible control offerors was reasonable.

3

RCH's argument that price was not meaningfully considered is substantively similar to the arguments addressed in *Stratera*. RCH waived the right to raise this issue during this protest, as it was clear how price would be considered in the solicitation.

RCH's argument that the use of the transitive property of inequality was unreasonable is also addressed in *Stratera*. The transitive property approach is not barred by any statute or the FAR, and the agency performed its analysis reasonably when comparing [*****] to other offerors. Through an in-depth comparison, the agency found RCH's proposal to be worse than [*****]. It also found [*****] to be worse than Steampunk's. It was reasonable, therefore, to conclude that Steampunk presented a better offer than RCH. We will not interfere with the agency's decision.[3]

## II. The Agency Did Not Unequally Evaluate RCH's Proposal

### a. Technical Approach

RCH argues that [*****] received two strengths under its technical approach that it should have received as well.[4] First, it argues that [*****] received a strength for "[*****]," while RCH put the same concept in its proposal but did not receive a strength. Pl.'s Mot. at 28. Second, RCH contends that [*****] received a strength for incorporating [*****] to collect user data in its proposal, but RCH did not receive a strength despite incorporating the same concept.

The government argues that [*****] proposals are distinguishable. First, [*****] use of [*****] principles contains greater details and more features, such as [*****]. Def.'s Mot. at 16 (quoting AR 2611). Second, RCH's proposal did not include [*****] and its approach to collecting data was different from [*****]. We agree with the government; RCH's

---

3 RCH also makes one last argument, claiming that the SSA simply used her "rubber stamp" to adopt the evaluation team's "faulty analysis." Pl.'s Mot. at 25. RCH does not elaborate on this argument. As stated, we do not find the evaluation team's analysis to be faulty, and our review of the record shows that the SSA considered all relevant materials in her analysis.

4 RCH did assert other strengths it should have received based on other offerors' received strengths, but it withdrew its arguments in its reply brief.

4

arguments are merely disagreements with the assigned strengths.

As stated in *Stratera*, the standard for this argument is that the proposals must be substantively indistinguishable or nearly identical.[5] [*****] use of [*****] principles contains greater detail than RCH's. While RCH contends it would also use [*****] during its process, its citation to its proposal speaks in generalities, such as how RCH would "follow a progressive refinement process" or "utilize a plethora of techniques to develop technical solutions." Pl.'s Reply at 8 (citing AR 2025). [*****] specifically described how it would [*****] in its proposal, illustrated how they would be used, and the specific steps entailed in their use. *See* AR 2611. The proposals are distinguishable, and we will not usurp the agency's discretion to assign strengths.

[*****] is also distinguishable from RCH's in multiple respects. For example, as the government points out, the portion of RCH's proposal that discusses the use of user data does not reference usability testing, let alone go into detail on how it would implement and use [*****]. *See* AR 2044. [*****] received its strength for its [*****], as RCH itself said, and its proposal went into detail about how it would be implemented and used. AR Tab 29, 01v16, D29; Pl.'s Mot. at 30. The proposals are distinguishable, and we will not interfere with the agency's decision.

### b. Program Management and Staffing Approach

RCH then argues that the agency irrationally evaluated its program management and staffing approach in two ways. It argues that the agency improperly bundled its strengths when it did not do so for other offerors, leading to RCH receiving fewer strengths. Second, it contends that [*****] received a strength for an aspect of its proposal, while RCH did not despite it having a similar proposal. The government maintains that it evaluated the proposals properly. We agree with the government.

RCH argues that the agency improperly bundled aspects of its

---

5 RCH argues that the substantively indistinguishable standard only applies to deficiencies, not strengths. RCH is mistaken; the standard is also used for strengths. *See Tech. Innovation Alliance LLC v. United States*, 149 Fed. Cl. 105, 132–33 (2020) (applying the "substantively indistinguishable" test for a strength).

5

proposal when awarding it a strength under its program management and staffing approach when the agency did not do so for other offerors.[6] Specifically, RCH asserts that because the agency found RCH's Orientation Team to be part of a strength under one RFP section, it should have given RCH strengths for other RFP sections where the Orientation Team applies. It points to Halvik's proposal which received multiple strengths under different RFP sections for its Agile Resource and Recruiting Center ("ARRC").

The government responds that it properly assigned strengths to the parties. It argues that under the factor for which RCH received a strength, the Orientation Team was merely part of that one strength and its other proposal components did not warrant strengths. It further argues that Halvik was properly awarded its strengths, as its AARC had "widespread applicability" and would accomplish "multiple tasks." Def.'s Mot. at 19 (citing AR Tab 27, 08F4, Cells G20–22). We see no reason to disagree with the government.

An agency has broad discretion in how it evaluates proposals and assigns strengths. RCH wrongly contends that simply because an aspect of its proposal was part of a strength in one RFP section, that necessitates the proposal receiving a strength for every RFP section in which that aspect appears. Whether an agency considers one element of a proposal to merit strengths under different sections of an RFP is a matter of discretion for the agency. The agency considered that Halvik's AARC did, while it did not think the same of RCH's Orientation Team. RCH does not argue that its proposal is substantively indistinguishable from Halvik's or that Halvik did not deserve those strengths; it only repeats the characteristics of its Orientation Team that corresponded with other sections of the RFP that it contends should have received strengths. Such arguments are mere disagreements with the agency's analysis.

Second, RCH also contends that [*****] received a strength that RCH should have received as well. Specifically, RCH argues that [*****] received a strength for its Program Management Office ("PMO") that included a [*****] with subject-matter experts, which RCH proposed as well. The government responds that the proposals do differ, as [*****] specified that it would have [*****]. Def.'s Mot. at 21–22. We agree with

---

[6] RCH raised additional arguments in its MJAR but waived them in its reply brief.

the government.

The proposals are not substantively indistinguishable in this respect. As stated by the government, RCH only referred to having experts generally, while [*****] specified that it would have an expert [*****].  [*****] also specified how it would utilize those experts when task orders for [*****] were awarded.  [*****] proposal was not substantively indistinguishable from RCH's, and it was fully within the agency's discretion to award [*****] a strength.

### III.   RCH Was Not Prejudiced by the Agency's Evaluation of Halvik's Past Performance

RCH's unique arguments concerning the evaluation of Halvik's past performance, and its other arguments which are similar to those made in *Stratera*, are largely irrelevant for the same reasons addressed in *Stratera*. RCH was not prejudiced by the agency's evaluation of Halvik, as [*****] was still ahead of RCH for award.

### CONCLUSION

Because the agency acted reasonably in its analysis, RCH's MJAR is denied and the government's and intervenors' cross-MJARs are granted.   The Clerk of the Court is directed to enter judgment for the defendant and dismiss the case.   No costs.

s/Eric G. Bruggink
Eric G. Bruggink
Senior Judge
